1  LAW OFFICES OF GERSON S. HORN
   GERSON S. HORN (SBN: 40857)
2  11661 San Vicente Blvd #903
   Los Angeles, CA 90049
3  Telephone: (310) 571-3855
   Facsimile: (310) 571-3515
4
   Attorney for Defendant
5  JERONE BRASCOM



FILED
CLERK, U.S. DISTRICT COURT

JAN - 3 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

6

7                 UNITED STATES DISTRICT COURT

8          FOR THE CENTRAL DISTRICT OF CALIFORNIA

9                      WESTERN DIVISION

10

11  UNITED STATES OF AMERICA,          CASE NO. 10-CR-1236-R

12                        Plaintiff,   DEFENDANT'S SENTENCING
                                       MEMORANDUM WITH EXHIBITS
13              vs.
                                       (UNDER SEAL)
14  JERONE BRASCOM, et al.,

15                        Defendants.

16



17

18

19

20

21

22

23

24

25

26

27

28

1  GERSON S. HORN (State Bar No. 40857)
   LAW OFFICES GERSON S. HORN
2  11661 San Vicente Blvd., Suite 903
   Los Angeles, California 90049
3  Telephone: (310) 571-3855
   Facsimile: (310) 571-3515
4  Email: gersonhorn@aol.com

5  Attorney for Defendant
   JERONE MONDALE BRASCOM
6

7



8              UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )   Case No. CR-10-01236-R
                                       )
12              Plaintiff,             )   **DEFENDANT'S OBJECTIONS TO**
                                       )   **THE PSR AND POSITION RE:**
13              v.                     )   **SENTENCING, WITH EXHIBITS**
                                       )   *(UNDER SEAL)*
14  JERONE MONDALE BRASCOM,            )
                                       )   Sentencing Date: January 9, 2012
15              Defendant.             )   Court: Hon. Manuel L. Real
                                       )
16  _____)

17

18      Defendant JERONE MONDALE BRASCOM, through counsel, hereby and herewith

19  submits his Objections to the Presentence Report and Position with Respect to Sentencing, with

20  Exhibits.

21      Defendant reserves the opportunity to make additional comments through counsel at the

22  sentencing hearing in this matter.

    Date:  December 27, 2011                    Respectfully submitted:
23
                                                GERSON S. HORN LAW OFFICES
24
                                          By    Gerson S. Horn
25                                              GERSON S. HORN
                                                Attorney for Defendant
26                                              JERONE MONDALE BRASCOM

27

28

# I.

## INTRODUCTION

Defendant Jerone Mondale Brascom, age 31, has pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §846. The offense arises from Mr. Brascom's transportation of drugs and drug proceeds between September 20, 2010 and November 2, 2010.   His role was that of a courier and he was involved for only five weeks. He received his instructions from his brother, co-defendant Ricky Brascom, who was in contact with the cocaine suppliers. Based on his limited involvement and the nature of his conduct, he should receive the 2-level minor role reduction pursuant to U.S.S.G. §3B1.2(b).

Mr. Brascom has been fully cooperative with law enforcement, despite the risk to himself and his family. In conversations with undersigned defense counsel, Mr. Brascom has stated that he fears for the safety of himself and his loved ones and he has trouble sleeping at night. In his proffer sessions, Mr. Brascom gave information concerning the drug-related activities of at least four of his co-defendants, as well as approximately 10 other drug dealers on the East Coast. Mr. Brascom has agreed to testify before either a grand jury or at a trial jury, if he is needed. The information he has provided at his proffer sessions is of high value. In their Sentencing Position, the Government recommends a six-level downward pursuant to §5K1.1 and a low-end Guidelines sentence of 108 months.

Mr. Brascom recognizes that his offense conduct was serious and that he will be required to serve a term of imprisonment. At the time of his involvement, Mr. Brascom, whose prior work record had been excellent, had been unemployed for approximately 18 months due to the recession. He was on the verge of losing his house to foreclosure. He fully understands that his financial problems at the time in no way justify his bad decision to transport drugs. It does appear, however, that his involvement was situational and would not have occurred had he not been recruited to work as a courier at a moment of significant financial hardship.

Mr. Brascom is married, and has a 10 year old daughter and a 7 year old son. He is by all reports an attentive and loving father. The character reference letters that have been

1   received describe his arrest as a huge wake-up call for this man.  He seems highly unlikely to
2   re-offend.

3        Based on Jerone Brascom's contrition, his solid work history, his family responsibilities,
4   and his Substantial Assistance,  a sentence of 48 to 60 months is requested.  A prison term of
5   this length would provide just punishment while not overly crippling this young man's ability
6   to pick up the pieces and return to his wife and children as a productive person once his debt is
7   fulfilled.

8                                         II.

9                            **DEFENDANT'S REMORSE**

10  In his letter, Mr. Brascom states to the Court:

11            I am writing to express the shame I feel for breaking the law by

12            transporting cocaine.  I don't think of myself as a bad person but

13            I know that what I did was very wrong.  I am fully aware that

14            drugs are harmful and that they can ruin peoples' lives.  I have

15            always thought of myself as a good citizen but realize fully that

16            what I did was anything but good.

17

18            When I made the terrible decision to transport the cocaine, I had

19            been unemployed for well over a year and was desperate.  Before

20            the recession hit...I had always had good jobs as a Hazardous

21            Waste Technician and as a carpenter...I realize that the fact that

22            the bottom dropped out of the economy does not justify my

23            decision to get involved with drugs.  It was the dumbest thing I've

24            ever done and I deeply regret it.  In order to make up for my

25            mistake to the best of my ability I've been cooperating completely

26            with law enforcement.  ...I have been completely truthful with

27            them.

28

## III.

### A GUIDELINE REDUCTION FOR ROLE
### IN THE OFFENSE IS APPROPRIATE

In the Presentence Report (hereinafter PSR), the U.S. Probation Office arrives at a Total Offense Level of 35, Criminal History Category III (prior, of course, to any consideration of this defendant's Substantial Assistance).

However, the PSR fails to recognize the limited role that Mr. Brascom occupied in the drug conspiracy. Based on §3B1.2, Application Note 3(A), a mitigated role adjustment can be warranted "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." In such cases, the defendant's participation typically includes transporting or storing drugs.

In the matter at bar, Jerone Brascom's involvement was limited to delivering drugs and picking up drug proceeds on a finite number of occasions. At no time did he give orders, supervise any other members of the conspiracy, or solicit any drug customers. As a courier, he was paid a flat rate for the trips he made.

A District Court's finding that a defendant qualifies for minor participant status is a factual determination subject to the clearly erroneous standard. United States v. Sanchez-Lopez, 879 F.2d 541, 557 (9th Cir. 1989).

In United States v. Rojas-Millan, 234 F.3d 464, 472072 (9th Cir. 2000), the Ninth Circuit makes clear that a district court "should consider culpability relative to the involvement of the other likely actors, such as the…supplier and the distributor," and that a defendant's role is to be compared with that of all the other actors who participated in the offense, not just with that of the defendants charged. In this instance, Mr. Brascom is not only substantially less culpable than the suppliers and distributors who were charged in his case; he is also substantially less culpable than many of the uncharged participants on the East Coast. It is noted that at his proffer sessions, Mr. Brascom provided law enforcement with valuable information pertaining to these uncharged participants including their descriptions and addresses.

1      If the two-level minor role reduction is applied, Mr. Brascom's advisory Guideline

2  range, prior to any downward departure for his cooperation or downward variance per 18

3  U.S.C. §3553(a), would be 108 to 135 months based on the following calculation:

4      Base Offense Level for Drug Quantity

5          [§§2D1.1(c)(1) & 2D1.1(a)(5)(iii)]            38/34

6      Mitigated Role Reduction [§3B1.2(b)]            -2

7      Adjusted Offense Level                          32

8      Acceptance of Responsibility [§3E1.1(a)&(b)]      -3

9      Total Offense Level                            29

10     Advisory Guideline Range at Crim. Hist. Category III   108 to 135 months

11     Incorporating the 6-level departure for §5K1.1 that the Government has recommended

12  further reduces Jerone Brascom's Guidelines to Level 23, Category III, 57 to 71 months.

13                                  **IV.**

14      **DEFENDANT BRASCOM CONCURS WITH THE GOVERNMENT'S**

15      **RECOMMENDED SIX-LEVEL DOWNWARD DEPARTURE**

16                **FOR SUBSTANTIAL ASSISTANCE**

17      Following his arrest, Defendant Jerone Brascom cooperated with law enforcement and

18  participated in multiple proffer sessions.  His cooperation, which was disclosed to a co-

19  defendant, was helpful in obtaining a guilty plea from that individual.[1]  He also provided

20  important information concerning drug distributors on the East Coast.  He was able to

21  positively identify several of these individuals when shown photographs.  He provided the case

22  agents with detailed directions to their houses and descriptions of their vehicles.  Mr. Brascom

23  further supplied names and descriptions of several of the couriers that worked for the East

24  Coast drug dealers.

25      In its Sentencing Position, the Government recommends a six-level departure in

26

27  [1] The Government points out that Mr. Brascom's willingness to testify was instrumental in co-
defendant Darrin Ebron's decision to enter a guilty plea.  Darrin Ebron was recently sentenced

28  to an 87 month term of imprisonment by this Honorable Judge.

1 recognition of Mr. Brascom's assistance. The defendant appreciates and agrees with the

2 Government's assessment of his cooperation and their recommendation.

3 ## V.

4 ## THE HISTORY AND PERSONAL CHARACTERISTICS OF THIS

5 ## DEFENDANT SUPPORT A MITIGATED SENTENCE

6 United States v. Booker, 543 U.S. 220 (2005), and Gall v. United States, 128 S.Ct. 586

7 (2007) have established that the "history and characteristics of the defendant" can play an

8 important part in determining the appropriate sentence.[2]

9 The following social history of Jerone Brascom is provided in the spirit of 18 U.S.C.

10 §3661 which states:

11 No limitation shall be placed on the information concerning the

12 background, character, and conduct of a person convicted of an

13 offense which a court of the United States may receive and

14 consider for the purpose of imposing an appropriate sentence.

15 • *Family Background*

16 Jerone Brascom was born in Eufaula, Alabama on November 13, 1980. He is one of

17 four brothers, three of whom are still alive. Jerone's biological father Otis Anglin, 47, and his

18 mother Angelia Brascom, also 47, were both raised in southeastern Alabama. They met while

19 still in high school, and Angelia was 16 when she gave birth to Jerone and his twin brother

20 Tyrone. Tyrone Brascom also resides in Colorado Springs, where he owns a janitorial business.

21 Jerone's mother Angelia lives in Colorado Springs, Colorado and is a college computer

22 technology instructor.

23

24

25

26 [2] Two other United States Supreme Court decisions, Spears v. United States, 555 U.S. (2009), and Nelson v. United States, 555 U.S. (2009), have reiterated that the Guidelines

27 are now truly advisory and there is no presumption at the District Court level that a Guideline sentence is inherently reasonable. See also Rita v. United States, 551 U.S. 338

28 (2007), and United States v. Tomko, No. 05-4997 (3rd Cir. April 17, 2009).

1  Co-defendant Ricky Brascom[3] was born two years later followed by Jerone's youngest
2  brother Barrick in 1986. Barrick was confined to a wheelchair, suffered from multiple birth
3  defects including cerebral palsy, and was unable to talk.

4  Otis Anglin, who worked in construction, developed bipolar disorder in his late teens or
5  early twenties, and proved to be an unreliable father and husband. He and Angelia separated
6  permanently around the time of Barrick's birth. Otis currently resides in Louisville, Alabama, a
7  hamlet of 600 people. He is unemployed.

8  • *Childhood and Adolescent Development*

9  Jerone spent his early years in Ozark, Alabama. He reports that his mother Angelia was
10  both father and mother to him and his brothers during their formative years. Angelia was
11  devoutly religious and Jerone and his brothers attended Sunday School at a Baptist Church in
12  the nearby town of Louisville. Jerone recalls:

13  My mother was pretty wonderful. She was a secretary who
14  worked a second job most of the time. Despite this she still found
15  the time to teach my brother Tyrone and me to read before we
16  started school. She was never abusive and would talk to us rather
17  than yell at us. She even helped me get started playing football.

18  Jerone attended Mixon Elementary School in Ozark up through the fourth grade. He
19  was a decent student who excelled in sports and made friends easily. When Jerone was nine,
20  his mother married a career army officer named Reginald Blakely. After that, the Brascoms
21  relocated regularly in keeping with Reginald's military deployments. When he graduated from
22  elementary school in 1993, Jerone's family moved to Tacoma, Washington and lived in a
23  townhouse on the Fort Lewis base. He attended Woodbrook Middle School in nearby
24  Lakewood where he continued to earn adequate grades. He also played football and baseball,
25  and he ran track on his school teams.

26
27
28
[3] Ricky Brascom's biological father is a man named Roy James.

7

1  Jerone's youngest brother Barrick had been born with both cerebral palsy and
2  lissencephaly, a neurological disorder that can result in psychomotor retardation, difficulty
3  swallowing, and various other abnormalities. The combination of the two diseases rendered
4  Barrick helpless. He couldn't walk or talk and had little use of his arms. He was confined to a
5  wheelchair and had to be painstakingly fed by hand. Jerone and his brothers took care of him
6  when their mother was working. Although the boys realized that Barrick could never have
7  even a semblance of a normal life, they cared for him and included him in their games. Barrick
8  was able to communicate with them through his facial expressions.

9  Lissencephaly victims often die within the first month or two of life, but Barrick
10  survived into his eighth year. Though the odds were sharply against him, Jerone and his
11  brothers convinced themselves that Barrick would live to adulthood. Jerone's mother Angelia
12  Brascom writes:

13          It's important that you understand...that Jerone, like his brother
14          Ricky, deeply loved his handicapped brother Lil Barrick who
15          passed away on November 14, 1994, one day after Jerone and
16          Tyrone's 14th birthday. To have his little brother die one day after
17          his own birthday celebration was completely devastating to Jerone
18          and I can only imagine how it has affected him.

19  Jerone had been out in the neighborhood with friends at the time of the accident and
20  always felt that if he had been at home, he might have been able to rescue his brother. Jerone's
21  brother and co-defendant Ricky, who was 12 and in the seventh grade, was feeding Barrick
22  when he choked. Both brothers, in effect, blamed themselves for the accident which in reality
23  was probably unavoidable. The family unfortunately did not seek grief counseling after
24  Barrick's death, and they have rarely talked about the accident.

25  Jerone graduated from Woodbrook Middle School in Washington in June of 1995. This
26  coincided with his step-father Reginald Blakely being deployed to Germany. At this point,
27  Jerone decided to return to Alabama and live with his biological father Otis Anglin. He
28  enrolled at Clayton High School for the ninth grade. It turned out that Otis had a drinking

1  problem and was abusive when intoxicated (See PSR, ¶87). On one occasion, Otis lost control
2  completely and shot Jerone when he attempted to escape from him. Although the wound was
3  superficial, Jerone fell into a ditch and broke his arm. After this incident, Jerone lived with an
4  aunt in a nearby town for the remainder of the school year.

5      Jerone attended King High School in Tampa, Florida for the tenth and eleventh grades.
6  He lived with his maternal aunt and worked at a Marshalls Department store to pay for his
7  clothes and expenses.

8      Jerone's mother Angelia and his step-father Reginald separated in 1997. By then
9  Angelia was living in Colorado Springs where she still resides. Jerone joined her there and
10  attended Fountain-Fort Carson High School for his senior year. By this time, he had developed
11  into an excellent basketball player and starred at point guard. He also worked at a T.J. Maxx
12  store. Jerone graduated from high school in June of 1999.

13  •  *Further Education and Employment History*

14      Following high school, Jerone was offered a basketball scholarship by Coby College in
15  Kansas and an aviation scholarship to Westwood College in Denver. He chose to stay close to
16  home, however, and he spent 2000 working on the assembly line at a doorknob manufacturer in
17  Colorado Springs. Angelia Brascom writes:

18          Jerone has always been an extremely hardworking young man.
19          While still in high school, he worked 20 hours a week at
20          department stores in Colorado Springs. After high school, he
21          worked for a doorknob manufacturer and as a Teacher's Assistant
22          working with handicapped children. Although Jerone never said
23          too much about this job, I believe it was in honor of his deceased
24          brother Lil Barrick.

26          When he was 21, Jerone enrolled at Intellitec College in Colorado
27          Springs where he earned an A.A. Degree in Network Systems
28          Administration. He was planning on making a career in this area

1                      but then discovered that there were excellent union jobs available

2                      in the field of hazardous waste materials. He joined the union and

3                      took all necessary classes in that area.

4        After completing his training, Jerone was hired as a Hazardous Waste Technician by

5 Envirocon Construction who had a contract to convert the old Rocky Flats military base into a

6 wildlife sanctuary. The buildings had been contaminated with radioactivity and had to be torn

7 down and hauled away without releasing radiation. Jerone's job was to monitor the air quality

8 in each building as it was being razed. If the radiation level got too high, the building was

9 evacuated and the Radiation Techs sprayed it down. Jerone stood guard wearing Proper

10 Protective Equipment (PPE) consisting of a respirator, an air tank, and an orange rubber suit

11 with black boots. This was an excellent job for a young man and he earned $24.80 an hour plus

12 overtime while working 6 and 7 day weeks.

13        The Rocky Flats job took 20 months to complete. When it ended, Jerone found an even

14 better position earning $27.69 per hour as a Decontamination Supervisor with Parson

15 Construction. He supervised four employees, checked for escaping mustard gases, kept logs on

16 all the equipment, and made sure that all of the trucks were pressure washed after dropping off

17 their loads. Each year Jerone took the required Hazardous Waste refresher courses. The Parson

18 job ended after three years in 2007.

19        By this point the Colorado economy was slumping toward recession. Jerone's next job

20 was with BNM Construction which was building a bridge at the Fort Carson military base. He

21 worked as a Safety Technician but earned $7 an hour less than he had with Parson Construction.

22 This job only lasted a year and ended in 2008. By then, the economy was in full collapse.

23 Jerone's last job was as a Carpenter's Apprentice with Mortenson Construction which had a

24 contract to build barracks at Fort Carson. This position ended in April of 2009. After that,

25 despite Jerone's impressive resume, he could find no work and was unemployed until his arrest

26 in November of 2010.

27 •    *Marriage/Children*

28

10

Jerone has two children and, by all reports, is a devoted and caring father.  His son
Javaria Brascom is 10 and lives with the child's mother Adrienne Carter in Colorado Springs.
His daughter, Janaysia Brascom, age 7, lives with her mother Laquindah Brascom in Fountain,
Colorado.  Jerone and Laquindah were married in February of 2011.

Jerone's mother Angelia writes:

> …Jerone made a bad choice and he is now paying the price.  When
> I talk to him on the phone, although he tries his best to sound
> upbeat, I know that his heart is breaking.  Jerone has two children
> that he loves dearly.  He did everything for both his son Javaria
> and his daughter Janaysia.  Javaria (his son) is taking it the worst;
> he misses talking to his dad, sharing all his thoughts and concerns
> with him.  Now that Jerone is not here for him, Javaria is always
> quiet not letting us know what is on his mind.  Jerone was always
> at his games (basketball and football) and now that he is not there,
> Javaria has stated that he does not want to play anymore…  This is
> very upsetting because, as we all know, sports are a great way to
> keep boys on a good positive path.  I am beside myself with worry
> and have a great deal of trouble sleeping at night.
>
> Janaysia, Jerone's daughter, is in much the same situation as
> Javaria.  Jerone was very good at doing things with his daughter
> and I know it's killing him to be separated from her.  Jerone
> entered Janaysia in the Ms. Little Colorado pageant, which she
> won.  I can still see the look of pride in my son's eyes when her
> victory was announced.  Jerone always prayed with his kids before
> they went to bed at night and I know he feels guilty for not being
> able to fulfill that duty at night for them as he did before.

1    Jerone's children are missing him; they need him terribly. He

2    never missed their birthdays or any of their events and they simply

3    do not understand what's gone wrong.

4    Jerone's mother-in-law Sharon Walker adds in her letter:

5    I have had a special relationship with Jerone for more than 10

6    years. He is a remarkable young man and a good father to his

7    children. He has always been the kind of guy that would give his

8    last to make sure everyone had what they needed, as far as sports,

9    food, housing and transportation. …I have spoke with Jerone on

10    why he is incarcerated. He is fully aware that he has made a

11    mistake and a bad choice in his life. He is so remorseful for what

12    has happened and I know without a shadow of doubt he regrets

13    every part of it. We have talked about his plans when he is

14    released to include, counseling youths and helping them avoid the

15    streets so that they will never make the mistakes he made…

16

17    I met Jerone 12 years ago when he met my oldest daughter who is

18    now his wife, he always was a very respectful, helpful and a hard

19    working man. When I would get sick he would make sure I had all

20    I needed…and that my recovery was going smooth… I believe in

21    him, he has a lot of family support that is willing to be there for

22    him through it all…

23

24    Jerone has strongly apologized to every family member… this is a

25    man that truly deserves another chance at life to prove himself and

26    show the courts how remorseful he sincerely is.

27    Jerone's brother-in-law Craig Lamar Walker, Jr. writes:

28

1   Jerone to me is not just a brother-in-law. He is a friend, someone I

2   can depend on, someone I trust, and someone I can always count

3   on to be there for me in those times of need... When I was

4   younger and didn't have much toys to play with, Jerone bought me

5   my 1st dirt bike. That dirt bike was one of the greatest things I ever

6   had. Also, when I was playing football for the Park and Rec

7   center...Jerone was always there to bring me to and from

8   practice. ...in my freshman year of high school, and I was slipping

9   up on my grades, Jerone was the person who talked to me and

10   motivated me to go even harder, and to never give up.

11

12   Jerone's incarceration has...impacted everyone greatly. I have

13   been trying to keep my head up and remain strong, but every now

14   and then, the calamity of this situation hits me and I break down.

15   But to my sister...it is much worse. She has to fly back and forth

16   from Colorado to California just to visit Jerone for a couple of

17   hours. She is much more tense than she used to be... It also has a

18   great effect on my niece. She is only 7 years old... I know it's

19   eating her alive not being able to spend time with her dad...

20   Reverend Jim Dotson is a retired Air Force officer and pastor of the Trinity Missionary

21   Baptist Church in Colorado Springs. Rev. Dotson offers in his letter:

22   I have been the pastor for the Brascom family for the past 13 years

23   and found them to be a patriotic, God-fearing family. Despite his

24   admission, I find the charges against Bro. Brascom to be

25   uncharacteristic of his strict religious upbringing. He was reared in

26   a home where serving God and country were the centerpiece of

27   faith and the foundation of their interpersonal relationships.

28

1    It is our prayer that you will exercise extreme mercy in the

2    sentencing phase of Jerone's trial. He has a family that truly

3    misses and needs him in the home. These are very dire economic

4    times and his wife is struggling to make ends meet on a single

5    income. His family also needs his presence and emotional support.

6    His daughter is constantly asking when he's coming home to the

7    heartbreak of her mother and anyone she approaches.

8

9    Jerone is part of a church family which can offer the rehabilitative

10   support to get him on the right path. We are a registered agency

11   with our county for community service and have the facility and

12   means to assist with re-entry into the community as a productive,

13   tax-paying citizen. We have partnerships with community

14   agencies which can aid with financial, Spiritual, educational and

15   training support for members returning to this community... We

16   are in pursuit of excellence in all we do and demand the highest

17   standards in all our candidates.

18   Jerone's wife Laquindah Brascom is employed as a Maintenance Technician for

19   Employment and Family Services with El Paso County Department of Human Services in

20   Colorado Springs. Laquindah Brascom reports:

21   I met Mr. Brascom when our families were both stationed in the

22   military at Fort Carson, Colorado in 1998. Mr. Brascom and I

23   became very good friends at this time. He would often send

24   myself and my family Hallmark cards around the holidays. In

25   1999, we began dating. At this time, he developed a very close

26   relationship with my family. Especially my younger brothers ages

27   13 and 5 at the time. Mr. Brascom became a role model for them.

28   He would often take them to the park and play basketball with

---

14

1      them. Still to this day they look up to him. I can

2      remember...when my grandmother passed away and it was very

3      hard for my family to deal with and Mr. Brascom was there the

4      entire time. Consoling us and wiping away our tears. As long as I

5      have know Mr. Brascom, he has been a devoted family man...

6

7      ...Since his incarceration, my husband has been very regretful of

8      the decisions he has made. He realizes that being apart from his

9      family is tearing us all apart. He has told me that if he was given

10     another chance, he will never take the path that he chose. On

11     numerous occasions he has said to me "all I want to do is be with

12     my family and raise my kids."

13                                 **VI.**

14                        **SUMMARY**

15     Unquestionably, Jerone Brascom committed a serious offense by agreeing to transport

16 cocaine in September of 2010 when he was recruited by his younger brother, co-defendant

17 Ricky Brascom. The fact that Jerone, who has an excellent work record, had been unemployed

18 for a year and a half due to the recession certainly does not excuse his participation. Since his

19 arrest, however, this young man has done everything right. He has cooperated fully with law

20 enforcement. He has positively identified individuals involved in drug sales and has supplied

21 names, descriptions and the locations of stash houses. The information he has supplied

22 contributed to obtaining a guilty plea from a co-defendant and is expected to help investigate

23 and indict other drug suppliers as well.

24     Mr. Brascom has provided substantial assistance even though he has valid reasons for

25 fearing reprisal. The drug organization for which he transported cocaine was large and

26 indisputably dangerous. Jerone has had difficulty sleeping ever since he made the decision to

27 cooperate, but he knows that he has done the right thing. He is well aware that cocaine is a

28 destructive substance and he hates the fact that he was involved in its transportation.

1    In their Sentencing Position, the Government recommends a 108 month prison term

2 based on the low-end of Level 29, Category III. The Government arrives at its

3 recommendation based on an offense level of 35 prior to a six-level downward departure

4 pursuant to §5K1.1. Mr. Brascom appreciates and acknowledges the Government's good faith

5 recommendation. He does believe, however, that since his participation was of relatively brief

6 duration and he functioned as a courier, the 2-level minor role reduction under §3B1.2(b)

7 should be applied.

8    Mr. Brascom's remorse and contrition are heartfelt. He will not re-offend. As

9 described in the body of this memorandum, he has two children who miss him intensely and to

10 whom he is deeply devoted. His wife Laquindah Brascom and his in-laws all describe him as a

11 caring and considerate individual who deserves some leniency from this Court. His pastor Rev.

12 Jim Dotson has stated that his church and its rehabilitative facilities will be there to help Mr.

13 Brascom get reestablished in the community upon his release from custody. Rev. Dotson's

14 organization is involved in a variety of community service activities and it would not be

15 unreasonable for Mr. Brascom to work off part of his punishment by performing extended

16 community service.

17    Several factors support a sentence below the Government's recommendation. Mr.

18 Brascom's brother Ricky Brascom recruited him to transport the cocaine and Jerone Brascom

19 would not have become involved were it not for his brother. The Government has

20 recommended a 120 month term of imprisonment for Ricky Brascom because he provided

21 Substantial Assistance pursuant to §5K1.1. Because Ricky Brascom was more deeply involved

22 in the conspiracy, and for a longer duration, it seems logical and reasonable that Jerone's

23 sentence should be substantially less than his brother's.

24    For all of the above reasons, Defendant Jerone Brascom, through counsel, respectfully

25 requests that his sentence be in the vicinity of 48 to 60 months. In addition, he should be

26 required to perform substantial community service upon his release from custody, and he could

27 also receive psychological counseling under the auspices of the United States Probation Office

28 when he begins his supervised release.

Dated: December 27, 2011

Respectfully submitted:

GERSON S. HORN LAW OFFICES

By

GERSON S. HORN
Attorney for Defendant
JERONE MONDALE BRASCOM

LAW OFFICES OF DAVID A. ELDEN
DAVID A. ELDEN
SBN: 46684
11377 West Olympic Blvd.
10TH Floor
Los Angeles, CA 90064
Telephone: (310) 478-3100
Facsimile: (310) 478-2200

Attorney for Defendant
RICKY BRASCOM

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>vs.<br><br>RICKY BRASCOM, et al.<br><br>                              Defendants. | CASE NO. 10-CR-1236-R<br><br>**DEFENDANT'S EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT [AND RELATED ORDER]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A. ELDEN**<br><br>(UNDER SEAL) |

The Defendant hereby applies <u>ex parte</u> for an order directing that the Defendant's EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT [AND RELATED ORDER]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A. ELDEN, as well as this ex parte application, be filed under seal.

DAVID ELDEN
Attorney at Law
11377 W Olympic Blvd
10th Floor
Los Angeles, CA 90064

///

///

///

1    This ex parte application is based on the attached memorandum of points and authorities, and

2  the attached declaration of DAVID A. ELDEN.

3

4

5  Dated: December 27, 2011                        LAW OFFICES OF DAVID A. ELDEN
                                                   A Professional Corporation
6

7

8                                                  _____
                                                   DAVID A. ELDEN
9                                                  Attorney for Defendant
                                                   RICKY BRASCOM
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVID ELDEN
Attorney at Law
11377 W Olympic Blvd
10ᵗʰ Floor
Los Angeles, CA 90064

2

## MEMORANDUM OF POINTS AND AUTHORITIES

The underlying document relates to and describes the ongoing cooperation. Public filing of the underlying document would tend to compromise the cooperation, in that the targets or subjects of his cooperation would be able to learn of the Defendant's cooperation and thus either abscond or frustrate the purposes of the cooperation.

Accordingly, the defendant requests that the EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT [AND RELATED ORDER]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A. ELDEN and this ex parte application be filed under seal. Should the Court deny this application, the Defendant requests that the underlying document, the related proposed order, and this ex parte application not be filed, but be returned to the defense counsel, without filing of the documents or reflection of the name or nature of the documents on the clerk's public docket.

DAVID ELDEN
Attorney at Law
11377 W Olympic Blvd
10th Floor
Los Angeles, CA 90064

## **DECLARATION OF DAVID A. ELDEN**

I, David A. Elden, declare as follows:

1.    I am a private defense attorney and currently represent Defendant in this case.

2.    The Defendant requests leave to file its EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT [AND RELATED ORDER]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A. ELDEN in this matter under seal. The EX PARTE APPLICATION FOR ORDER SEALING DOCUMENT [AND RELATED ORDER]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A. ELDEN discusses information provided by or activities conducted by defendant that may endanger him or individuals close to him. Particularly where the pleading discusses cooperation by the defendant.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 27, 2011

_____
DAVID A. ELDEN

DAVID ELDEN
Attorney at Law
11377 W Olympic Blvd
10th Floor
Los Angeles, CA 90064

4

1

## CERTIFICATE OF SERVICE

2      I certify that on December 27, 2011 a copy of this DEFENDANT'S EX PARTE

3  APPLICATION FOR ORDER SEALING DOCUMENT [AND RELATED ORDER];

4  MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID A. ELDEN

5  (UNDER SEAL ) was served electronically on:

6

7  Rob B. Villeza
   Assistant United States Attorney
   United State Attorney's Office
8  1200 United States Courthouse
   312 North Spring Street
9  Los Angeles, CA 90012
   E-mail:  rob.villeza@usdoj.gov
10

   Elizabeth Morony
11 United States Probation Office
   600 United States Courthouse
12 312 N.  Spring Street
   Los Angeles, CA 90013
13 E-mail:  Elizabeth_Morony@cacp.uscourts.gov

14

15      I declare under penalty of perjury that the above is true and correct to the best of my
   knowledge.
16

17

18 Claudia Arboleaz
   Assistant to David A. Elden
19

20

21

22

23

24

DAVID ELDEN
Attorney at Law          25
11377 W Olympic Blvd
10th Floor
Los Angeles, CA 90064    26

27

28

5

1
# CERTIFICATE OF SERVICE

2     I certify that on December 27, 2011 a copy of this DEFENDANT'S OBJECTIONS TO

3
THE PSR AND POSITION RE: SENTENCING, WITH EXHIBITS *(UNDER SEAL)* was

4
served electronically on:

5

6

7 Rob B. Villeza
Assistant United States Attorney
8 United State Attorney's Office
1200 United States Courthouse
9 312 North Spring Street
Los Angeles, CA 90012
10 E-mail: rob.villeza@usdoj.gov

11     The United States Probation Office was served via facsimile:

12 Luis Rivas
United States Probation Office
13 600 United States Courthouse
312 N. Spring Street
14 Los Angeles, CA 90013
Facsimile: (213) 894-3620

15     I declare under penalty of perjury that the above is true and correct to the best of my

16
knowledge.

17

18 Gerson S. Horn    by telephonic authorization
GERSON S. HORN

19

20

21

22

23

24

25

26

27

28

# APPENDIX

Exhibit A          Letter from Defendant Jerome
                   Brascom


Exhibit B          Letters from Concerned Parties


Exhibit C          Certificates and Transcripts

October 22, 2011

Honorable Manual L. Real
United States District Judge
312 N. Spring Street
Los Angeles, California 90012

Your Honor,

I am writing to express the shame I feel for breaking the law
by transporting cocaine. I don't think of myself as a bad person
but I know that what I did was very wrong. I am fully aware that
drugs are harmful and that they can ruin peoples' lives. I have
always thought of myself as a good citizen but realize fully that
what I did was anything but good.

I have been in prison for over a year now and it has been very
hard for me. I have a 10 year old son and a 7 seven year old
daughter who both live in Colorado. I am very close to both of
them, and my wife Laquindah and my mother tell me how much
they miss me.

Although my conviction makes me seem like a bad person, I
have always been a good father and a hard worker. I love both my
son and my daughter with all my heart and have always spent
plenty of time with them teaching them the right way to do things.
I know my son is really struggling. He's a good athlete and I was
his coach and teacher. My mother has told me that now that I'm
locked up, my son doesn't want to play sports anymore because I
can't be there to watch him. When I hear that it breaks my heart.

When I made the terrible decision to transport the cocaine, I
had been unemployed for well over a year and was desperate.
Before the recession hit, and it hit hard in the Colorado Springs
area where I live, I had always had good jobs as a Hazardous Waste
Technician and as a carpenter. I was able to support myself and
my children without too much difficulty. I liked my work and was
always on time and ready to work hard.

I realize that the fact that the bottom dropped out of the
economy does not justify my decision to get involved with drugs. It
was the dumbest thing I've ever done and I deeply regret it. In

order to make up for my mistake to the best of my ability I've been cooperating completely with law enforcement. I have met with the Government and the agents on many occasions and I have been completely truthful with them. I understand that will be taken into account when I am sentenced.

I wish there was some way for me to undue the damage I've done to myself and my children. My only real hope is that you will find it in your heart to be merciful when it is time to sentence me. You can rest assured that I will never break the law again no matter how bad the economy is. All I want in life is to get home to my wife and children.

Thank you, Your Honor.

Very Sincerely,

Jerone Brascom

# TRI..TY MISSIONARY BAPTIST CHU..H

REVEREND JIM DOTSON  Pastor

*"Except the Lord build the house, they labor in vain . . ."*
Psalm 127:1a

July 16, 2011

Honorable Manuel L. Real
United States District Judge
312 North Spring Street
Los Angeles, California

Sir:

I am writing this letter on behalf of Brother Jerone Brascom. I am Rev. Jim Dotson, pastor of the Trinity Missionary Baptist Church, the Vice-President of the Southern Colorado Ministerial Union and the Chairman of the Board of the Colorado Southern District of the National Baptist Convention, USA, Inc. I am a retired Air Force officer and a member of the original cadre of the Center for Character Development at the Air Force Academy. It is a pleasure for me to write this letter on behalf of Brother Brascom because he was and could be a valuable asset to the Trinity Family.

I have been the pastor for the Brascom family for the past 13 years and found them to be a patriotic, God-fearing family. Despite his admission, I find the charges against Bro. Brascom to be uncharacteristic of his strict religious upbringing. He was reared in a home where serving God and country were the centerpiece of faith and the foundation of their interpersonal relationships.

It is our prayer that you will exercise extreme mercy in the sentencing phase of Jerone's trial. He has a family that truly misses and needs him in the home. These are very dire economic time and his wife is struggling to make ends meet on a single income. His family also needs his presence and emotional support. His daughter is constantly asking when he's coming home to the heartbreak of her mother and anyone she approaches.

Jerone is a part of a church family which can offer the rehabilitative support need to get him on the right path. We are a registered agency with our county for community service and have the facility and means to assist with re-entry into the community as a productive, tax-paying citizen. We have partnerships with community agencies which can aid with financial, Spiritual, educational and training support for members returning to this community. We can assist with grant and scholarship applications and offer tutorial and other academic assistance.

We can guarantee you that we can make more productive use of his time that can be offered by the prison system. We are in pursuit of excellence in all we do and demand

the highest standards of all our candidates. While we understand the difficulty of making sentencing decisions, we feel we can have a positive impact that is not afforded by incarceration. We are certainly worth considering as a viable alternative if you have a reciprocal agreement between and LA and El Paso Counties.

May God bless you in giving us favorable consideration in these matters.

Sincerely,

Jim Dotson, Pastor
Trinity Missionary Baptist Church

Dear Judge Real,

My name is Craig Lamar Walker Jr. I am the brother of LaQuindah Campbell/Brascom, who is the wife of Jerone Brascom. I'm 17 years of age, and I will be attending Fountain-Fort Carson as a senior in the upcoming 2011-2012 school year. Jerone to me is not just a brother-in-law. He is a friend, someone I can depend on, someone I trust, and someone I can always count on to be there for me in those times of need. I always knew Jerone meant a lot to me, but since he has been gone it really shows me how important he was to me, my sister, and my niece. When I was younger and didn't have much toys to play with, Jerone bought me my 1st dirt bike. That dirt bike was one of the greatest things I ever had. Also, when I was playing football for the Park and Rec center and no one could take me to practice, Jerone was always there to bring me to and from practice. Or, like in my freshmen year of high school, and I was slipping up on my grades, Jerone was the person who talked to me and motivated me to go even harder, and to never give up.

Jerone and I have been exchanging emails and talking on the phone for the past couple of weeks. We have talked about so many different things about life. I know he has learned from his mistake. We have talked and talked on this subject, and I know, as well as him, he would not dare make the mistake of doing what he did ever again. We have also spoken of what his plans are for the future. Once he's released, he plans to resume his life, but this time spending more time with the people he loves. Doing more family oriented things, and keeping out of trouble.

Of the 12 years I've known Jerone, he has never disrespected or hurt anyone. He has always been a helping hand to me and the people around me. I know he is an aspiring person who has many goals in life to achieve, and that he works hard at whatever he does. He has always been known as someone who will bend over backwards to help others before helping himself. I know Jerone is also a great father. My niece; JaNaysia was/is always being taken care of. Jerone spent lots of time with her when he wasn't incarcerated, and that will resume once he is released.

Jerone's incarceration has also impacted everyone greatly. I have been trying to keep my head up and remain strong, but every now and then, the calamity of this situation hits me and I break down. But to my sister on the other hand, it is much worse. She has to fly back and forth from Colorado to California just to visit Jerone for a couple of hours. She is much more tense now than she used to be. Her moods now are much more unstable than they used to be due to the amount of constant stress she is under. I know it is affecting her daily life greatly because when Jerone wasn't incarcerated, they were always spending time together. It also has a great effect on my niece. She is only 7 years old, so my sister decided she didn't want to tell her that her father is currently in jail. So, I frequently hear my niece crying out "I miss my daddy," while she's under the impression that her dad is "working," out in California. It is one of the worst thoughts that I think about. A little girl, who misses her father but doesn't have any clue on the extent of this issue. For example, on the 4th of July, the doorbell rang, and my mom told her "go get the door, and grab a pan," she misunderstood and shouted "it's my dad?!?" I was standing right there, and the excitement in her tone, and in her eyes, I saw how starved she was of not being with her father for so long. When that happened, I had to catch myself because I started tearing up. I know it's eating her alive not being able to spend time with her dad.

To conclude my letter, I would like to say that despite Jerone's mistake, he is a great man. I know he is apologetic and regretful for his mistake. I strongly believe the court should be compassionate in his sentencing.

Sincerely,

Craig Lamar Walker Jr.

Dear Judge Real,

     My name is Sharon Walker, I'm the Mother in-law of Jerone Brascom, as well as
a close friend and Spiritual adviser at the church he attends in Colorado Springs, CO. I've
been a Hair Stylist for 11 years and married for 20 years to a great retired Military man.
We have 3 children and 4 grandchildren and have a great hand in raising them. All to
include helping out with Mr. Brascom's 7 year old daughter, Janaysia. I'm very well
known in my community as well as the local schools an other churches. I give great
support in helping men an woman trying to get there life back after drugs and prison. I
have had a special relationship with Jerone for more than 10 years. He is a remarkable
young man and a good father to his children. He has always been the kind of guy that
would give his last to make sure everyone had what they needed, as far as sports, food,
housing and transportation. He's always came to me with good ideas, an good advice. I
have spoke with Jerone on why he is incarcerated. He is fully aware that he has made a
mistake and a bad choice in his life. He is so remorseful for what has happened and I
know without a shadow of doubt he regrets every part of it. We have talked about his
plans when he is released to include, counseling youths and helping them avoid the streets
so that they will never make the mistakes he made. I met Jerone 12 years ago when he
met my oldest daughter whom is now his wife, he always was a very respectful,  helpful
and a hard working man. When I would  get sick he would make sure I had all I needed to
get by and that my recovery was going smooth. Jerone has always been that way every
since I've known him. Compassionate, happy, willing, strong willed, good father, great
leader just to name  few, that's how I would describe this giant of a man. I believe in him,
he has a lot of  family support that is willing to be there for him through it all. Jerone has
had some stumbling stones in which he had to try and deal with after the great loss of his
good job as a HVAC/Hazmat tech, he loved that job so much and was very depressed
when he was laid off. I am in no way justifying what he has done was right but I know he
will never go that route again in life. He is a very good child and is very close to his mom.
He loves his wife and children so much, I know he regrets everyday of this, his daughter
often cries out "I want daddy," for they were so close that I was afraid of her behavior
change, she is clearly having a hard time and we continue to comfort her.  I know that this
has truly burned his heart a great deal. Not being able to sleep, thinking about the
outcome of these proceedings and not knowing his fate. That itself is very hard on him as
well as the family. Jerone has strongly apologized to every family member that he knows
this has impacted during this stint with the law, and for that reason alone I asked in
sentencing him Your Honor, will you be as lenient as possible. I pray that something in
my letter has touch the courts and they can see that this is a man that truly deserves
another chance at life to prove himself and show the courts how remorseful he sincerely
is. I believe that a very long incarceration will continue to hurt the kids and change lives
all around. Family is so important to bond together, and keep together by any means
necessary. Truly, I believe this case calls for compassion in sentencing for I know in my
heart of hearts this will be a changed man. I thank you for taken time out of your busy
schedule to read this sincere letter for my beloved family member Mr. Jerone Brascom.

                                              Sincerely,
                                        Minister Sharon Walker

Dear Judge Real,

My name is Craig Walker; I'm Jerone Brascom's Father In-law and grandfather to his beautiful 7 year old daughter. I'm also a very close friend of Jerone. I'm retired from the military. I have been a School bus Driver for 10 years, and a barber for 12 years. I've been married to a very wonderful and special lady for 20 years. I'm a father of 3 wonderful children and a grandfather of 4 very beautiful grandkids. I'm very involved in my church and community to include volunteering, helping non-profit organizations. I support young men and woman, to include teenagers and youths.

I have a very good relationship with Jerone whom I have known for over 10 years. Jerone is very outstanding and caring. He is a great husband, father and friend. He is very supportive of his family; he makes sure that they are all taken care of to the best of his ability. Jerone would help anyone that he could when they are in need. I have spoken with Jerone and he understands and knows he made a mistake and not a day of him being incarcerated goes by without him missing his family. I know, as well as he knows that he regrets what he did and he feels remorseful about it. I met Jerone 10 years ago when he met my daughter. Jerone is a great young man, whom I love having as part of my family, and we pray for him every night. His wife and daughter love him and miss him so much.

Jerone being incarcerated has put a great deal of stress upon his family and loved ones. Jerone has always been a hard working young man who only wanted to provide for his family. After him being laid off and unable to find work, that really took a toll on him. He felt that everything around him was caving in. In no way am I justifying what he did, but what I'm asking and praying for is that in you sentencing can you please be a lenient as possible. His kids and family need him and I fear a long incarceration will have a negative impact on his kid's lives. Your honor, I want to thank you for taking time to read my letter. I pray that it will have a positive impact on your decision for the sentencing of my beloved son in-law, Jerone Brascom.

Sincerely,

Craig L. Walker



# Certificate of Training

Colorado Laborers' and Contractors' Education and Training Fund

This is to certify that

JERONE BRASCOM

has successfully completed the course requirement for

**80-Hour Hazardous Waste Worker Training Program**

on

JANUARY 30, 2004

JANUARY 30, 2005

Expiration Date

Instructor(s)

Instructor(s)

Instructor(s)

10505 Havana • Brighton, CO 80601 • (303) 287-3116

Director of Training

4240839984131O104

Certificate Number

## 80 - HOUR HAZARD WASTE
## TRAINING COURSE



**JERONE M BRASCOM**

Certificate Number
42408389841310104

S S #                424083898

Date Completed      1/30/2004

Refresher Date  1 30 2005

THIS CERTIFICATE INDICATES SUCCESSFUL COMPLETION OF
TRAINING AS REQUIRED BY OSHA 29 CFR 1910 120

## Hazard Communication



**JERONE M BRASCOM**

Certificate Number
42408389841310104

S S #                424083898

Date Completed      1/20/2004

Training Director   ARNOLD VIGIL

Instructor    TED B AUKER



Confined Space Worker - Permit Required

**JERONE M BRASCOM**

Certificate Number
42408389841310104

S S #              424083898

Date Completed     1/27/2004

Training Director   ARNOLD VIGIL

Instructor    TED B AUKER